## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| MSP RECOVERY CLAIMS SERIES 44, LLC, a Delaware entity,<br><br> Plaintiff,<br><br>v.<br><br>THE TRAVELERS INDEMNITY COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY, THE TRAVELERS CASUALTY COMPANY, TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, TRAVELERS COMMERCIAL CASUALTY COMPANY, and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br> Defendant. | Case No.: COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

Plaintiff, MSP Recovery Claims Series 44, LLC ("MSPRC 44"), a Delaware entity, on behalf of its Designated Series, brings this action against Defendants The Travelers Indemnity Company, Travelers Casualty and Surety Company, The Travelers Casualty Company, Travelers Casualty Insurance Company of America, Travelers Commercial Casualty Company, and Travelers Property Casualty Company of America (collectively referred to as "Travelers" or "Defendants"), and alleges:

### INTRODUCTION

1.      More than forty years ago, Congress passed the Medicare Secondary Payer Act (the "Act" or "MSP Act") to deal with ballooning medical entitlement costs, by transforming Medicare from the entity that always foots the bill, into a safety net for the medical expenses of beneficiaries

1

who also were covered by private plans and insurers such as Travelers.

2.    Six years later, Congress recognized that it needed to do more to make this transformation effective and amended the MSP Act to add a private cause of action so persons and private entities could recover secondary payments made by Medicare (and later, by Medicare Advantage Organizations ("MAOs")[1] that private plans and insurers had failed to reimburse. Congress provided for double damages, so that private litigants would be motivated to take arms against a recalcitrant insurer.

3.    In 1997, Congress created the "Medicare Advantage" option under Part C of Medicare, 42 U.S.C. § 1395w-21(a)(1)(B), with the hope that Medicare Advantage would eclipse traditional Medicare. Under Medicare Advantage, Medicare enrollees receive their Medicare benefits from a private health insurer, which are known as Medicare Advantage Organizations or "MAOs." Today, nearly 40% of all Medicare beneficiaries receive their benefits under a Medicare Advantage Plan.

4.    Even though it is settled law that MAOs have parity of recovery rights, insurers have disregarded for more than a decade their repayment obligations to MAOs. That failure improperly depletes the trust funds that support Medicare Advantage, which are the same trust funds that support Medicare Parts A and B. *See* 42 U.S.C. § 1395w-23(f). Accordingly, Congress' mandate that Medicare shall not be the entity that always foots the bill is still a long way from being implemented. This case seeks to reconcile, in a structured and fair way, claims for reimbursement that Travelers owes to MAOs that assigned their rights to MSPRC 44, which will more effectively

---

[1] MAOs include Medicare Service Organizations ("MSOs"), Independent Physician Associations ("IPAs"), and other first tier and downstream entities (collectively "MAOs"). As the Eleventh Circuit has explained, "some MAOs contract with smaller organizations, like independent physician associations, that have closer connections to local healthcare providers. These smaller organizations, or 'downstream' actors, are also a part of the Medicare Advantage system . . . ." *MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1308 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 2758 (2021).

implement Congress' original intent in passing the MSP Act.

## TRAVELERS' DUTIES TO MEDICARE AND MAOS

5.      Travelers is a property and casualty insurer in the business of collecting premiums in exchange for taking on the risk that insureds will be injured, and Travelers will be contractually obligated to pay for their insureds' accident-related medical care. Travelers also collects premiums in exchange for taking on the risk that their insureds will injure someone else, and Travelers will be required to indemnify its insureds, typically through a settlement agreement that releases the third-party claimant's claim for accident-related medical care.

6.      Under both circumstances, Travelers falls within the MSP Act's definition of a "primary plan," which includes "an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance." 42 U.S.C. § 1395y(b)(2)(A). As a primary plan, Travelers is charged with two duties under the Act: (1) to notify the secondary payer (whether it be Medicare or an MAO) of Travelers's primary payer status, and (2) to repay the secondary payer, within 60 days. 42 U.S.C. § 1395y(b)(2)(B)(ii), 1395w-22(a)(4).

7.      If Travelers is rendered a primary plan and fails to repay the Medicare lien within 60 days, the MSP Act automatically gives rise to a right to bring an action such as this one. Failure to reimburse Medicare or MAOs for accident-related medical payments effectively results in a windfall for Travelers, to the detriment of the Medicare trust funds and taxpayers.

## PARTIES, JURISDICTION, AND VENUE

8.      MSPRC 44, is a Delaware series limited liability company with a principal place of business located at 2701 S. Le Jeune Road, 10th Floor, Coral Gables, Florida 33134.

9.      MSPRC 44 is a Series LLC. Under Delaware law, a Series LLC operates similarly to, but not the same as, a corporation and its subsidiaries. MSPRC 44 is the master LLC. Each individual Series entity forms a part of MSPRC 44, and MSPRC 44 owns and controls each

individual Designated Series entity.

10.     MSPRC 44 established various designated series pursuant to Delaware law in order to maintain various claims recovery assignments separate from other company assets, and to account for and associate certain assets with certain series. All designated series form a part of MSPRC 44, and pursuant to MSPRC 44's limited liability agreement and applicable amendment(s), each designated series is owned and controlled by MSPRC 44.

11.     MSPRC 44 may either (1) receive assignments directly to it from third parties in the name of MSPRC 44, and further associate such assignments with a particular Series, or (2) may have claims assigned directly to a particular Designated Series. In either event, MSPRC 44 possesses the right to sue on behalf of each Designated Series and pursue any and all rights, benefits, and causes of action arising from assignments to a Designated Series by way of its limited liability agreement.

12.     As permitted under Delaware law, MSPRC 44's limited liability agreement vests in the master LLC the right to initiate and maintain legal proceedings on behalf of its Designated Series entities individually or collectively. Any claim or suit may be brought by MSPRC 44 in its own name, or in the name of its Designated Series, individually or collectively.

13.     MSPRC 44 specifically alleges it possesses valid assignments to bring actions for seeking redress for all claims described herein.

14.     MSPRC Series 44-20-388 is a Designated Series entity of MSPRC 44 with its principal place of business at 2701 S. Le Jeune Road, 10th Floor, Coral Gables, Florida 33134. Series 44-20-388's Certificate of Designation, dated October 22, 2020, provides that MSPRC 44 may assert all of the same rights as Series 44-20-388 and may sue on Series 44-20-388's behalf: "[Series 44-20-388] continues as a separate designated series of [MSPRC 44] under the LLC Act and the LLC Agreement. For avoidance of doubt, (i) any and all rights, benefits, and causes of action arising from

assignments of claims to [Series 44-20-388] form part of [MSPRC 44's] assets, (ii) [MSPRC 44] has the right and authority to seek reimbursement of Medicare payments in respect of any such assigned claims, whether in the name of [Series 44-20-388] or [MSPRC 44] , and (iii) [MSPRC 44] maintains the legal right to sue on behalf of [Series 44-20-388]. Any claim or suit capable of being asserted or brought by [Series 44-20-388] may be brought by [MSPRC 44] (on behalf of itself or in the name of [Series 44-20-388])."

15.    MSPRC 44 made a good faith effort to accurately identify Travelers in this Complaint, in reliance on information obtained from Travelers's website, and an independent vendor, MyAbility, which is part of Ability Network.[2] MyAbility allows companies, such as MSP, to access data that primary payers report to CMS. Reporting data attached as **Exhibit A** to this Complaint is taken directly from data inputted by Travelers to CMS, either directly or through its vendor (such as Insurance Services Office ("ISO")). Accordingly, any inaccuracy or lack of specificity in the data is attributable to Travelers.

16.    Any time Travelers receives a claim for accident-related insurance benefits, the MSP Act requires Travelers to "determine whether the claimant . . . is entitled to [Medicare] benefits[.]" 42 U.S.C. § 1395y(b)(8)(A)(i). If that claimant is indeed a Medicare-eligible beneficiary, Travelers must then provide a Section 111 to CMS at a time "after the claim is resolved [by Travelers] through a settlement, judgment, award, or other payment (regardless of whether or not there is a determination or admission of liability)." 42 U.S.C. § 1395y(b)(8)(A)(ii). Therefore, when Travelers makes a Section 111 report to CMS, it is admitting it made a "payment" to a Medicare-eligible beneficiary, and that the purpose of Travelers's payment was to "resolve" the beneficiary's accident-related claim for medical benefits.

---

[2] If Travelers's reporting method resulted in MSPRC identifying the incorrect Travelers affiliate, MSPRC 44 reserves the right to amend this Complaint and add the correct defendant.

17.    By making such a payment, as admitted in its Section 111 report, Travelers demonstrates it is the "primary plan," which means Travelers must reimburse Medicare for any conditional payments Medicare made that relate to the beneficiary's accident.  Under the MSP Act, "a primary plan must reimburse Medicare for [its] conditional payments 'if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service.' . . . A primary plan's responsibility for payment may be shown by: a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured . . . ." *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1299 (11th Cir. 2022) (citing 42 U.S.C. § 1395y(b)(2)(B)(ii)).

18.    Given this statutory framework, MSPRC 44 may justifiably rely on Travelers's reporting to identify Travelers as the primary plan for the beneficiaries at issue in this case.

19.    The Travelers Indemnity Company is an insurer who issues liability and no-fault policies and is incorporated in the state of Connecticut. According to National Association of Insurance   Commissioner's   website   located   at   https://sbs.naic.org/solar-external-lookup/lookup/company/summary/134514999?jurisdiction=CT   [last accessed on October 13, 2022], its principal place of business is in the state of Connecticut at the address of One Tower Square, PB06A, Hartford, Connecticut 06183.

20.    Travelers Casualty and Surety Company is an insurer who issues liability and no-fault policies and is incorporated in the state of Connecticut. According to National Association of Insurance   Commissioner's   website   located   at   https://sbs.naic.org/solar-external-lookup/lookup/company/summary/134515628?jurisdiction=CT   [last accessed on October 13, 2022], its principal place of business is in the state of Connecticut at the address of One Tower Square, PB06A, Hartford, Connecticut 06183.

21.     The Travelers Casualty Company is an insurer who issues liability and no-fault policies and is incorporated in the state of Connecticut. According to National Association of Insurance     Commissioner's     website     located     at     https://sbs.naic.org/solar-external-lookup/lookup/company/summary/134516168?jurisdiction=CT     [last accessed on October 13, 2022], its principal place of business is in the state of Connecticut at the address of One Tower Square, PB06A, Hartford, Connecticut 06183.

22.     Travelers Casualty Insurance Company of America is an insurer who issues liability and no-fault policies and is incorporated in the state of Connecticut. According to National Association of Insurance Commissioner's website located at https://sbs.naic.org/solar-external-lookup/lookup/company/summary/134515144?jurisdiction=CT     [last accessed on October 13, 2022], its principal place of business is in the state of Connecticut at the address of One Tower Square, PB06A, Hartford, Connecticut 06183.

23.     Travelers Commercial Casualty Company is an insurer who issues liability and no-fault policies and is incorporated in the state of Connecticut. According to National Association of Insurance     Commissioner's     website     located     at     https://sbs.naic.org/solar-external-lookup/lookup/company/summary/134515721?jurisdiction=CT [last accessed on October 13, 2022], its principal place of business is in the state of Connecticut at the address of One Tower Square, PB06A, Hartford, Connecticut 06183.

24.     Travelers Property Casualty Company of America is an insurer who issues liability and no-fault policies and is incorporated in the state of Connecticut. According to National Association of Insurance Commissioner's website located at https://sbs.naic.org/solar-external-lookup/lookup/company/summary/134515051?jurisdiction=CT     [last accessed on October 13, 2022], its principal place of business is in the state of Connecticut at the address of One Tower Square, PB06A, Hartford, Connecticut 06183.

25.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331.

26.    Venue is proper in this District pursuant to 28 U.S.C. §1391 (b), (c), and (d) because at all times material hereto, Travelers resided, transacted business, was found, or had agents in this District, and a substantial portion of the alleged activity affecting trade and commerce discussed below has been carried out in this District.

27.    This Court has personal jurisdiction over Travelers because it is at home in this forum, and personal jurisdiction over Travelers does not offend traditional notions of fair play and substantial justice.

## STANDING ALLEGATIONS

28.    MSPRC 44 uncovers MSP Act noncompliance through data analytics, which requires cross-referencing unreimbursed, accident-related conditional payments in their assignors' claims data with instances where insurers reported to CMS under Section 111 that they were responsible, which made them primary payers under the MSP Act as a matter of law. While MSPRC 44 has no direct access to the Section 111 reporting, MSPRC 44 obtains reports from MyAbility which, as alleged above, is a subscription service that contracts with CMS and provides to subscribers what primary payers report to CMS.

29.    While this cross-referencing exercise may be successful in identifying some unreimbursed conditional payments, the bulk of those payments remain hidden without discovery. This is so because insurers either failed to report all their claims pursuant to Section 111 (which until this year, resulted in no penalty) or withdrew their reports prior to detection by an MAO. The only way to fully identify all secondary payments that insurers failed to reimburse is by comparing an MAO's and an insurer's claims data.

30.    For the above reasons, the accurate and complete amount of MSPRC 44's damages

cannot be known until after Travelers has produced lists of no-fault and third-party claims that they

settled. Accordingly, and solely for the purpose of demonstrating standing to pursue claims against

Travelers, and to obtain the discovery MSPRC 44 needs, the following example of Travelers's

failure to reimburse and comply with the MSP Act are alleged below.

31.    MSPRC 44 sets forth below allegations related to a representative beneficiary to

illustrate Travelers's failure to fulfill its statutory duties to reimburse MSPRC 44's assignor for

conditional payments.  Travelers has these statutory duties: (i) as a direct "no-fault" and/or other

liability insurer; and (ii) when entering into settlements on behalf of tortfeasors who are sued by

Medicare beneficiaries. In both sets of circumstances, Travelers reported and admitted its primary

payer status and responsibility for the accident-related expenses for medical items and/or services

provided to beneficiaries for which Emblem made conditional payments.

## Assignment Allegations

32.    MSPRC 44's claims in this lawsuit stem from its assignment agreement with Blue

Cross & Blue Shield of Massachusetts ("BCBSMA"), an MAO. On December 18, 2018, BCBSMA

irrevocably assigned to MSP Recovery, LLC any and all of its rights to recover payments made on

behalf of its Enrollees ("BCBSMA Assignment"). The BCBSMA Assignment expressly provides, in

pertinent part:

> Client irrevocably assigns, transfers, conveys, sets over and delivers to MSP
> Recovery, and any of its successors and assigns, any and all of Client's right, title,
> ownership and interest in and to all recovery and reimbursement rights against
> Responsible Parties arising from and related to the Medicare Secondary Payer Act
> in connection with Client's Claims that are identified on a data transfer following
> execution of this Assignment and Recovery Agreement, exclusive of the claims
> identified on a carve out list, and including any and all legal or equitable rights to
> pursue and/or recover monies related to the Claims that Client had, may have had,
> or has asserted against any party in connection with the Claims and all rights and
> claims, legal or equitable, against primary payers, Responsible Parties and/or third
> parties that may be liable to Client arising from or relating to the Claims, all of the
> described Claims herein constituting the "***Assigned Claims Rights***".

BCBSMA Assignment § 1.1.1.

33.    The "Assigned Claims Rights" excluded "claims identified on a carve out list" as well as "(i) any Claims rights belonging to Client that are currently being pursued directly by Client or by another Client vendor, all of which will be specifically identified by Client and included on a Carve Out List, and (ii) unless approved by Client, any claims or lien recoveries in class action, antitrust, medical device, pharmaceutical or multidistrict litigation not directly related to the Medicare Secondary Payer statute." *Id.* at § 1.1.4.

34.    On April 10, 2019, MSP Recovery, LLC assigned the rights it had acquired in the BCBSMA Assignment to Series 15-11-388, a designated series of MSP Recovery Claims, Series LLC ("Series Assignment"). The Series Assignment from MSP Recovery, LLC to Series 15-11-388, which was ratified and approved by BCBSMA, states:

> The Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Claims" and "Assigned Claims", any and all proceeds and products thereof (collectively the ***"Assigned Claims"***) as such terms are defined in the Recovery Agreement.

35.    Further, on October 22, 2020, Series 15-11-388 entered into an assignment agreement with Series 44-20-388, a designated series of Series 44, whereby it irrevocably assigned all rights it acquired through its assignment agreement with MSP Recovery, LLC. This third assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties, and was entered into under Florida law:

> [Series 15-11-388] . . . hereby irrevocably assigns, transfers, conveys, sets over, and delivers to [Series 44-20-388] and its successors and assigns, (i) any and all of Assignor's right, title, ownership, and interest in and to that Agreement, as well as (ii) the "Claims" and "Assigned Claims", and all proceeds and products thereof (collectively the "Assigned Claims") as such terms are defined in the Agreement.
>
> This Assignment includes all the Assigned Claims irrespective of when the claims were vested in BCBSMA, inclusive of any and all claim(s), causes of actions, proceeds, products, and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party, including claims

10

under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to BCBSMA arising from or relating to the Claims and all information relating thereto.

36.    Consideration was given between each party in executing these assignments.

37.    In accordance with the BCBSMA Assignment, which provided for assignment of all claims "identified on a data transfer following execution of this Assignment and Recovery Agreement," BCBSMA made data transfers of claims data with the understanding and intent that it was assigning those claims via the data transfers.

38.    At the time of the BCBSMA Assignment, and at all times since, BCBSMA has possessed ripe MSP Act claims for reimbursement against Travelers based on Travelers's failure to adhere to the ongoing and continuous statutory duty to reimburse BCBSMA for conditional payments made to Medicare beneficiaries.

39.    This Complaint seeks recovery only for claims BCBSMA has assigned to MSPRC 44 through its Designated Series (Series 44-20-388). No claims brought in this Complaint are subject to any carveouts and no claims are being pursued by another assignee, third-parties, or recovery vendor acting upon BCBSMA's behalf.

## The Settlement Representative Beneficiary

40.    In exchange for premiums, Travelers may take on the risk of loss and accident-related medical expenses incurred by third parties who suffered an injury induced by either its customers and/or their covered property. When these instances arise, Travelers executes a settlement agreement on behalf of its insured with the covered persons.

41.    When Travelers executes a settlement agreement with a covered person, who is enrolled in a Medicare plan, Travelers becomes a primary payer that is responsible for the reimbursement of the medical services rendered to the covered person. Travelers's duty to reimburse conditional payments made by Medicare Participants for the health services rendered is

nondelegable. Travelers may not transfer its responsibility for reimbursement to covered persons or other third parties.

42.     After executing settlement agreements in each instance identified below, Travelers failed to provide actual notice of its primary payer status to the Medicare participants who paid for the beneficiaries' medical expenses. Travelers may not rely on state law to shirk its federal statutory reimbursement obligations to the Medicare system. Travelers may not sit, wait, derelict its federal affirmative duties and then invoke absolution under state law.

**C.B.**

43.     On February 13, 2017, C.B. was enrolled in a Medicare Advantage Plan issued by BCBSMA, an MAO and MSPRC 44's Designated Series assignor in this action.

44.     On February 13, 2017, C.B. was injured in an accident. As a direct and proximate result of the accident, C.B. sustained injuries that required medical items and services.

45.     Travelers's insured responsible for the incident was insured under policy number 1H884555.

46.     A list of C.B.'s diagnosis codes and injuries in connection with C.B.'s accident-related treatment is attached hereto as **Exhibit B.** The codes used are standard medical industry codes, which correspond to specific treatments and procedures. These codes are well known to Travelers and can be found through a simple Internet search. For further information on the format of this claims data, *see* Appendix.

47.     C.B.'s medical services were rendered between February 14, 2017 and April 10, 2017. The medical providers subsequently issued bills for payment of C.B.'s accident-related medical expenses to BCBSMA. The medical providers billed and charged BCBSMA $1,757.48 for C.B.'s accident-related medical expenses, of which BCBSMA paid $369.90 (*see* **Exhibit B**). At the time BCBSMA Assignment, BCBSMA's right to seek reimbursement for C.B.'s accident-

related treatment was never assigned to and/or pursued by other recovery vendors. BCBSMA held all recovery rights to C.B.'s accident-related treatment and conveyed them to MSPRC 44. BCBSMA did not retain the recovery right to C.B.'s claim.

48.     Following C.B.'s claim against Travelers's insured, Travelers indemnified its insured tortfeasor and made payments pursuant to a settlement with C.B. By virtue of entering into that settlement and obtaining a release of all claims, Travelers became a primary payer responsible for payment and/or reimbursement of C.B.'s accident-related medical expenses.

49.     In fact, Travelers reported information to CMS regarding the accident, the name of the reporting entity, the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of C.B.'s accident-related medical expenses. (*See* **Exhibit A**).

50.     However, Travelers improperly reported its primary payer status to CMS for C.B.'s accident-related injuries, by reporting "Travelers" as the plan name. In the ultimate act of obfuscation, Travelers reported the plan as being issued by an entity that does not exist. "Travelers" is not a legal entity and MSPRC 44 has no way of identifying which of the many Travelers entities is the proper plan name. As a result, MSPRC 44 has named various potential Defendants in this Complaint and will amend accordingly when the proper reporting entity is identified.

51.     In any event, this reporting demonstrates Travelers was aware of its responsibility to reimburse BCBSMA.

52.     Despite reporting it was a primary payer, and the corresponding admission it should have paid for C.B.'s accident-related injuries, Travelers failed to remit and/or reimburse such payments.

53.     Travelers was aware of its MSP Act responsibility to reimburse conditional payments advanced for medical services rendered to C.B. Travelers was also aware of its 42 C.F.R.

§ 411.24(f)(2) duty to notify the Medicare carrier that paid for C.B.'s medical expenses, in this instance BCBSMA. Travelers did not notify BCBSMA of its primary responsibility to pay for C.B.'s medical expenses.

54.    In the time since the incident, Travelers has enjoyed the use of BCBSMA's funds to the detriment of the Medicare system. MSPRC 44 has sent a 42 C.F.R. § 411.25 demand letter to Travelers contemporaneously with the filing of this Complaint. If MSPRC 44 receives a response to the 42 C.F.R. § 411.25 demand letter from Travelers, then MSPRC 44 will amend the Complaint accordingly.

55.    MSPRC 44 expended a great deal of effort and resources to uncover Travelers's failures in the handling of C.B.'s claims and the unjust enrichment Travelers has benefitted from during this period of noncompliance. As BCBSMA's assignee, MSPRC 44 instituted this action to recover the debt.

56.    Accordingly, MSPRC 44 is entitled to collect double damages against Travelers for its failure to reimburse BCBSMA's conditional payment for C.B.'s accident-related medical expenses.

### Statute of Limitations Tolling

57.    To the extent necessary, the claims asserted in this Complaint have been tolled as a matter of law by the pendency of various class actions, as to which BCBSMA was a putative class member, alleging MSP Act violations.[3]

### COUNT I
### Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)
### (as to BCBSMA's unreimbursed payments)

58.    MSPRC 44 re-alleges and incorporates herein by reference each of the allegations

---

[3] *See*, *MSP Recovery Claims, Series LLC, et al v. Northland Insurance Company, et al*, Case no., 20-cv-24176-KMW (S.D. Fla., October 12, 2010).

contained in the preceding paragraphs 1-57 as if fully set forth herein.

59.     MSPRC 44 asserts a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A).

60.     Travelers's no-fault and liability policies are primary plans, which rendered Travelers the primary payer for its beneficiaries' accident-related medical expenses.

61.     As part of providing Medicare benefits under the Medicare Advantage program, BCBSMA paid for items and services which were also covered by no-fault, personal injury protection, or medical payments policies issued by Travelers.

62.     Travelers also entered into settlements with beneficiaries relating to accidents but failed to reimburse BCBSMA for accident-related medical expenses paid by BCBSMA. As primary payers, Travelers had a nondelegable duty to reimburse conditional payments advanced by Medicare participants for medical services rendered to beneficiaries. Travelers is liable for reimbursement of these accident-related medical expenses, even if it subsequently paid out the maximum benefits under the policies.

63.     Travelers was required to timely reimburse BCBSMA for conditional payments made on behalf of beneficiaries' accident-related medical expenses.

64.     BCBSMA (and this, MSPRC 44) suffered damages as a direct result of Travelers's failure to comply with its statutory and regulatory duties under the MSP Act and the corresponding regulations within the Code of Federal Regulations.

65.     Travelers derived substantial monetary benefit by placing the burden of financing medical treatments on BCBSMA.

66.     Travelers failed to administratively appeal BCBSMA's rights to reimbursement within the administrative remedies period. Travelers, therefore, is time-barred from challenging the propriety, reasonableness and necessity of the amounts paid.

67.     MSPRC 44 only seeks to recoup accident-related medical services rendered to

beneficiaries.

68.    MSPRC 44 brings this claim pursuant to 42 U.S.C. § 1395y(b)(3)(A), to recover double damages from Defendant, The Travelers Indemnity Company for its failure to make appropriate and timely reimbursement of conditional payments for beneficiaries' accident-related medical expenses.

69.    Further, due to The Travelers Indemnity Company's improper reporting of the plan name in its CMS Section 111 report for the representative beneficiaries subject to this Complaint, such as those named in this Complaint, MSPRC 44 alternatively brings this claim pursuant to 42 U.S.C. § 1395y(b)(3)(A), to recover double damages from:

- Travelers Casualty and Surety Company;

- The Travelers Casualty Company;

- Travelers Casualty Insurance Company of America;

- Travelers Commercial Casualty Company; and/or

- Travelers Property Casualty Company of America.

For each alternatively named Defendant, MSPRC 44 alleges that the Defendant was the primary payer, responsible for coverage of the medical treatments received by BCBSMA's beneficiaries, such as the one identified in this Complaint. Therefore, as to each alternatively named Defendant, MSPRC 44 seeks damages based on that Defendant's failure to timely reimburse BCBSMA for conditional payments it made for its beneficiaries' accident-related medical expenses. Once Travelers identifies the proper entity(ies) within the Travelers group of companies, MSPRC 44 will amend the Complaint accordingly.

### COUNT II
**Declaratory Relief Pursuant to 28 U.S.C.**
**§ 2201 (as to BCBSMA's unreimbursed payments)**

70.    MSPRC 44 re-alleges and incorporates herein by reference each of the allegations

contained in the preceding paragraphs 1-57 as if fully set forth herein.

71.    MSPRC 44 alleges that as part of providing Medicare benefits under the Medicare Advantage program, BCBSMA paid for items and services which were also covered by no-fault, personal injury protection, or medical payments policies issued by Travelers.

72.    Travelers entered into settlements with beneficiaries relating to accidents but failed to reimburse BCBSMA for accident-related medical expenses paid by BCBSMA. As a primary payer, Travelers had a nondelegable duty to reimburse conditional payments advanced by Medicare participants for accident-related medical services rendered to covered persons. Travelers is liable for reimbursement of these accident-related medical expenses, even if they subsequently paid out the maximum benefits under the policies.

73.    Travelers was required to timely reimburse BCBSMA for conditional payments made on behalf of beneficiaries' accident-related medical expenses.

74.    An actual, present, and justiciable controversy has arisen between MSPRC 44 and Travelers concerning its obligation to reimburse BCBSMA.

75.    MSPRC 44 seeks a declaratory judgment from this Court establishing that The Travelers Indemnity Company has a historical, present, and continuing duty to reimburse BCBSMA for payments made on behalf of beneficiaries' accident-related medical expenses. MSPRC 44 also seeks a declaration of what amounts are due and owing by The Travelers Indemnity Company to BCBSMA.

76.    Further, due to The Travelers Indemnity Company's improper reporting of the plan name in its CMS Section 111 report for the representative beneficiaries subject to this Complaint, MSPRC 44 is unable to determine precisely which Travelers entity, or entities, failed to reimburse BCBSMA. Therefore, MSPRC 44 pleads in the alternative, seeking a declaratory judgment against:

- Travelers Casualty and Surety Company;

- The Travelers Casualty Company;

- Travelers Casualty Insurance Company of America;

- Travelers Commercial Casualty Company; and/or

- Travelers Property Casualty Company of America.

As to each alternatively named Defendant, MSPRC 44 seeks a declaration that the Defendant has a historical, present, and continuing duty to reimburse BCBSMA for payments made on behalf of its beneficiaries for their accident-related medical expenses. MSPRC 44 also seeks a declaration of what amounts are due and owing by Travelers Casualty and Surety Company, The Travelers Casualty Company, Travelers Casualty Insurance Company of America, Travelers Commercial Casualty Company, and/or Travelers Property Casualty Company of America to BCBSMA. Once Travelers identifies the proper entity(ies), MSPRC 44 will amend the Complaint accordingly.

77.     A determination of what amounts are owed by Travelers to BCBSRI is exceedingly complicated, difficult, and the amounts due are not readily ascertainable.

78.     Under Connecticut law, one of several conditions must exist for an equitable accounting: there must either be a fiduciary relationship, or the existence of mutual and/or complicated accounts, or a need of discovery, or some other special ground of equitable jurisdiction, such as fraud.

79.     A coordination of benefits process requires plans to share information between the primary payer and secondary plan and to act in good faith.

80.     The Code of Federal Regulations defines the coordination of benefits system as a "coordination of benefits transaction."[4]

---

[4] The "coordination of benefits transaction" is the transmission from any entity to a health plan for the purpose of determining the relative payment responsibilities of the health plan, of either of the following for health care: (a) claims and (b) payment information. 45 C.F.R. § 162.1801.

81.    The coordination of benefits transaction involves the exchange of thousands of claims data and data points between the parties to determine overlapping instances where BCBSMA made payment of medical items and services on behalf of a Medicare beneficiary who was entitled to the benefit of insurance coverage provided by Travelers. This includes not only instances in which a Medicare beneficiary was directly insured by Travelers, but also instances in which a Medicare beneficiary was injured by Travelers's policyholder.

82.    The exchange of claims data would need to be done by extracting and producing certain data fields from Travelers's and MSPRC 44's databases by using demographic identifiers, such as Social Security Number ("SSN"), Health Insurance Claim Number ("HICN"),[5] date of birth, sex, and address. Beneficiary matching pinpoints the number of relevant insureds and simplifies the process of identifying reimbursable claims, which is done by matching the date of loss (for Travelers), with dates of payment (for MSPRC 44), and then discovering what Travelers reimbursed (if anything), and to whom.

83.    The data MSPRC 44 requests from Travelers to perform an accounting is information MSPRC 44 is already entitled to without litigation. 42 C.F.R. § 411.25(a); 59 Fed. Reg. 4285.

84.    As of the date of this Complaint, Travelers has not shared any information and has not responded to correspondence sent to Travelers pursuant to 42 C.F.R. § 411.25.

85.    Given the size of the claims and data points being exchanged between the parties, the coordination of benefits transaction is complex.

86.    An equitable accounting of the amounts owed MSPRC 44 by Travelers is proper because the facts and accounts presented are so complex that adequate relief may not be obtained at law.

87.    MSPRC 44 is entitled to an accounting of all instances where Travelers settled under

---

[5] Also known as a Medicare Beneficiary Identifier ("MBI").

a third-party insurance policy or accepted coverage under a first party insurance policy, including the identity of each claimant, or if known to Travelers, claimants for whose benefit BCBSMA provided or paid for items or services.

88.    Thus, MSPRC 44 lacks an adequate legal remedy to obtain the requested information, and an accounting is the appropriate remedy.

## JURY TRIAL DEMAND

MSPRC 44 demands a trial by jury on all of the triable issues within this pleading.

## PRAYER FOR RELIEF

WHEREFORE, MSPRC 44 seeks a judgment granting the following relief:

i.    a judgment awarding reimbursement of double damages for those amounts to which MSPRC 44 is entitled under 42 U.S.C. § 1395y(b)(3)(A), as alleged in Count I;

ii.    a judgment declaring that Travelers has a historical, present, and continuing duty to reimburse BCBSMA for payments made on behalf of beneficiaries' accident-related medical expenses as alleged in Count II;

iii.    a judgment ordering an accounting of all instances where Travelers settled under a third-party insurance policy or accepted coverage under a first party insurance policy, including the identity of each claimant, or if known to Travelers, claimants for whose benefit BCBSMA provided or paid for items or services;

iv.    a judgment awarding MSPRC 44 pre-judgment and post-judgment interest consistent with the statute; and

v.    a judgment awarding MSPRC 44 such other and further relief as the Court deems just and proper under the circumstances.

Dated: October 13, 2022.

Respectfully submitted,

*/s/Sanford P. Dumain*
Sanford P. Dumain (CT Bar No. 08138)
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC**
100 Garden City Plaza
Garden City, NY 11530
Tel: (212) 594-5300
Fax: (212) 818-9150
Email: sdumain@milberg.com
***Attorney for Plaintiff***

## APPENDIX

**CMS' Standard for Storing Digital Health Insurance Claims Data**

1.       It is the custom and practice of CMS and Primary Payers to maintain records in a detailed electronic format. According to the U.S. Department of Health and Human Services (HHS), CMS, federal statutes, and industry best practices and guidelines, the standard format for storing digital health insurance claims data is an electronic data interchange ("EDI") format called 837P ("837").

        a.   The 837 standard is mandated by the federal government and used federal and state payors such as Medicare and Medicaid.

        b.   The 837 standard is also used by private insurers, hospitals, clinics, physicians and other health care providers (i.e., HIPAA covered entities) who typically adopt CMS standards.

        c.   Paper claims are captured in the CMS 1500, UB04, and UB92 forms, but electronically, the standard for storing data is the 837 format.

2.       Essential components of an 837-claim file include but are not limited to the date(s) of service, diagnosis code(s) and medical procedure code(s).

        a.   <u>Dates (including dates of service)</u>: the standard format for dates in electronic health care claims is YYYYMMDD, CCYYMMDD, or MM/DD/YYYY.

                i.   According to industry best practices and guidelines, and HHS and CMS, the standard format for expressing dates in healthcare insurance claims data is CCYYMMDD (CC representing two numeric digits to indicate Century, YY representing two numeric digits for year, MM representing two digits for the month, and DD representing two digits for the day of the month).

Sometimes this is alternately expressed as YYYYMMDD.

[1]

   ii.   The CCYYMMDD date format standard has been in place for many years. *See* CMS Guidance for 2010[2], 2011[3], 2012[4], 2013[5], 2014[6], and 2016.[7]

   iii.   CMS has also accepted the MM/DD/YYYY format for its local coverage determination data.[8]

   iv.   The purpose of the date format is to ensure that dates of health care claims

[1] *See* the Medicare Claims Processing Manual Chapter 3 and CMS Manual System, Pub 100-08 Medicare Program Integrity, Transmittal 721.

[2] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 761 (Aug. 20, 2010), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R761OTN.pdf.

[3] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 988 (Oct. 28, 2011), available at https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R988OTN.pdf.

[4] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 1050 (Feb. 29, 2012), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R1050OTN-.pdf.

[5] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 1277 (Aug. 9, 2013), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R1277OTN.pdf.

[6] Memorandum from Tracey McCutcheon, Acting Director, Medicare Drug Benefit and C & D Data Group, and Laurence Wilson, Director, Chronic Care Policy Group, to All Part D Plan Sponsors and Medicare Hospice Providers (Mar. 10, 2014) (on file with author), *available at* https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/Hospice/Downloads/Part-D-Payment-Hospice-Final-2014-Guidance.pdf.

[7] Memorandum from Cheri Rice, Director, Medicare Plan Payment Group, and Cathy Carter, Director, Enterprise Systems Solutions Group, to All Medicare Advantage, Prescription Drug Plan, Cost, PACE, and Demonstration Organizations Systems Staff (Nov. 9, 2016) (on file with author), *available at* https://www.cms.gov/Research-Statistics-Data-and-Systems/CMS-Information-Technology/mapdhelpdesk/Downloads/Announcement-of-the-February-2017-Software-Release.pdf.

[8] Local Coverage Determination (LCD) Date of Service Criteria, *available at* https://www.cms.gov/medicare-coverage-database/search/lcd-date-search.aspx?DocID=L35093&bc=gAAAAAAAAAAAA.

such as the date a medical procedure was provided (date of service or "DOS") in comparison to the date of settlement, can be searched, sorted and properly selected as compensable or non-compensable claims.

v. In general, ensuring the accuracy of dates, and other data is essential to analyzing claims data files by health insurers and others who may need to determine the value of claims, the relevance of particular claims with respect to patient conditions, dates of care, or whether the claim is compensable.

b. Medical Diagnosis and Procedure Codes:

i. Diagnosis-Related Group (DRG) – DRGs are a statistical system of classifying any inpatient stay into groups for the purposes of payment. The DRG classification system divides possible diagnoses into more than 20 major body systems and subdivides them into almost 500 groups for the purpose of Medicare reimbursement. Factors used to determine the DRG payment amount include the diagnosis involved as well as the hospital resources necessary to treat the condition.[9][10]

ii. International Classification of Diseases (ICD-9 and ICD-10) – Hospitals report diagnosis information using codes from the ICD-9-CM (the International Classification of Diseases, 9th Edition, Clinical Modification if the date of service is before October 1, 2015) or ICD-10 CM (if the date

---

[9] Gillian I. Russell, Terminology, in FUNDAMENTALS OF HEALTH LAW 1, 12 (American Health Lawyers Association 5th ed., 2011).

[10] Beginning in 2007, CMS overhauled the DRG system with the development of "severity- adjusted DRGs" and began to replace DRGs with "Medicare-severity DRGs" or "MS-DRGs" through a three-year phase-in period that blended payment under the old DRG system and the MS- DRG system. In a small number of MS-DRGs, classification is also based on the age, gender, and discharge status of the patient. The diagnosis and discharge information is reported by the hospital using codes from the ICD-9-CM or ICD-10-CM if the date of service is on or after October 1, 2015.

of service is on or after October 1, 2015).

iii. Inpatient medical procedures ICD-9 Volume 2 and Volume 3 and ICD-10 PCS – These codes are used to describe inpatient medical procedures, excluding the physician's bill.

iv. Current Procedural Terminology ("CPT") – CPT[11] codes are a standardized listing of descriptive terms and identifying codes for reporting outpatient medical services and procedures as well as both inpatient and outpatient physician services. The current version, CPT-4, is maintained by the American Medical Association and is an accepted standard by the National Committee on Vital Statistics or NCVHS.[12]

v. Ambulatory Patient Classification (APC) – Services performed in outpatient ambulatory surgery centers may be classified by APCs. CMS assigns individual services to APCs based on similar clinical characteristics and similar costs.[13]

vi. Healthcare Common Procedure Coding System (HCPCS) – HCPCS is mainly used to indicate medical supplies, durable medical goods, ambulance services, and durable medical equipment, prosthetics, orthotics and supplies (DMEPOS).[14]

---

[11] CPT codes and descriptions are copyrights of the American Medical Association Current Procedural Terminology.

[12] National Committee on Vital and Health Statistics, Consolidated Health Informatics Initiative, *available at* http://www.ncvhs.hhs.gov/meeting-calendar/agenda-of-the-december-9-10-2003- ncvhs-subcommittee-on-standards-and-security-hearing/consolidated-health-informatics- initiative-final-recommendation-information-sheet-billingfinancial-for-the-december-9-2003- ncvhs-subcommittee-on-standards-and-security-hearing/.

[13] CMS, Hospital Outpatient Prospective Payment System, Partial Hospitalization services furnished by hospitals or Community Mental Health Centers, Ambulatory Payment System, https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/HospitalOutpaysysfctsht.pdf.

[14] American Academy of Professional Coders (AAPC), https://www.aapc.com/resources/medical-

vii. Medical Data Code Sets – The standard Code set for medical diagnosis and procedure codes in health care claims is a series of digits as specified in 45 C.F.R. § 162.1002.

viii. The purpose of standard diagnosis code sets is to use a universal terminology in describing patients with certain conditions to determine compensable or non-compensable claims.

ix. CMS primarily utilizes two systems of classification: (1) International Classification of Diseases ("ICD-9" and "ICD-10") medical diagnosis codes; and (2) Current Procedural Terminology ("CPT-4") procedure codes. *See* 45 C.F.R. § 162.1002.

---

coding/hcpcs.aspx.